UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DUANE STEPHENS,

                                        Plaintiff,

v.
                                                        3:15-CV-00622
                                                        (TWD)

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main St.
P.O. Box 89
Endicott, New York 13761

HON. RICHARD S. HARTUNIAN                       SIXTINA FERNANDEZ, ESQ.
U.S. Attorney for the                           Special Assistant U.S. Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                       STEPHEN P. CONTE, ESQ.
Social Security Administration                  Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>DECISION AND ORDER</u>

Plaintiff Duane Stephens brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits and Supplemental Security Income.

(Administrative Transcript at 13.[1])  This case has proceeded in accordance with General Order

18 of this Court which sets forth the procedures to be followed when appealing a denial of Social

Security benefits.  Both parties have filed briefs.  Oral argument was not heard.  Pursuant to 28

U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States

Magistrate Judge.  (Dkt. No. 11.)  For the reasons discussed below, the Commissioner's motion

is denied, Plaintiff's motion is granted, and the case is remanded for reconsideration.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Duane Stephens filed for Disability Insurance Benefits and Title XVI

Supplemental Security Income on June 27, 2012, claiming disability as of March 12, 2012.  (T.

at 13.)  Plaintiff was born on January 3, 1966, and alleges disability due to asthma, emphysema,

depression, and limited cognitive abilities.  (T. at 15, 35.)  His application was denied on October

10, 2010, and he subsequently filed a written request for a hearing on October 31, 2012.  (T. at

13.)  A hearing was held on November 6, 2013, before Administrative Law Judge ("ALJ") Barry

E. Ryan.  *Id.*  The ALJ issued his decision on January 15, 2014, finding Plaintiff not disabled.

(T. at 13-26.)  The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied Plaintiff's request for review on April 8, 2015.  (T. at 1.)  Plaintiff

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth herein will
be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use page numbers assigned by the
Court's CM/ECF electronic filing system.

timely commenced this action in the United States District Court for the Northern District of

New York on May 21, 2015.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance any substantial gainful

activity by reason of any medically determinable physical or mental benefits or SSI disability

benefits must establish that he or she is "unable to engage in impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2016).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"

3

> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-

Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

(quoting *Perez*, 77 F.3d at 46).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado,* 805 F. Supp. at 153.  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 12, 2012.  (T. at 15.)  At step two, the ALJ found that Plaintiff had severe impairments consisting of chronic obstructive pulmonary disease ("COPD"), asthma, and intellectual disability.  *Id.*  The ALJ found Plaintiff's depression and left knee pain to be non-severe.  (T. at 15, 17.)  He then found at step three that Plaintiff's impairments did not meet or medically equal the severity of listed impairments 3.02 (chronic pulmonary insufficiency), 3.03 (asthma), 12.02 (organic mental disorders), or 12.05 (intellectual disability) in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  (T. at 17-18.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that he was capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (T. at 20.)  The ALJ further concluded that Plaintiff "should avoid concentrated exposure to environmental pollutants and airborne irritants."  *Id.*  As to Plaintiff's mental capabilities, the ALJ found that he:

> retains the ability (on a sustained basis) to understand and follow simple instruction and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others appropriately, and handle reasonable levels of simple work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

*Id.*

In support of his determination that Plaintiff was capable of performing light work activities despite any physical limitations, the ALJ accorded great weight to the opinion of

Family Nurse Practitioner Lynn Verduin ("FNP Verduin"). (T. at 21.) The ALJ gave some weight to the opinion of consultative examiner Mushaq Sheikh, M.D. ("Dr. Sheikh"). *Id.* With respect to Plaintiff's mental RFC, the ALJ afforded some weight to FNP Verduin's opinion. (T. at 22.) He accorded partial evidentiary weight to the opinion of consultative examinder Cheryl Loomis, Ph.D. ("Dr. Loomis"). *Id.* The ALJ also accorded great weight to the opinion of State Agency medical consultant L. Blackwell, M.D. ("Dr. Blackwell"). (T. at 23.)

At step four of the five-step analysis, the ALJ found Plaintiff was unable to perform his past relevant work as a laborer and parts cleaner due the requirements of lifting and/or carrying more than twenty pounds, which exceeds the limits of his RFC. (T. at 25.) The ALJ determined Plaintiff's education level to be that of at least a high school education. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.*

At step five, the ALJ found Plaintiff's mental and environmental limitations would have little or no effect on the occupational bases of unskilled sedentary and light work, and therefore, based upon Plaintiff's RFC for light work, Plaintiff's age, education, and work experience, a finding of "not disabled" was appropriate in consideration of Medical-Vocational Rule 201.28. (T. at 26.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that: (1) the ALJ erred at step two by not finding his left knee pain severe; (2) the ALJ erred at step three by not finding Plaintiff had deficits in adaptive functioning and therefore did not meet Listing 12.05(c); (3) the ALJ's RFC determination is not based on

substantial evidence because he failed to fully consider Plaintiff's limitations due to his COPD and inability to maintain attention and concentration; and (4) the ALJ erred at step five because he did not consult with a vocational expert. (*See generally* Dkt. No. 12.) Defendant contends the ALJ's decision is supported by substantial evidence. (*See generally* Dkt. No. 13.)

## V. DISCUSSION

On this appeal, Plaintiff argues the ALJ erred by not more carefully considering the applicability of Listing 12.05(c), by not giving Dr. Loomis' findings more weight in forming the mental RFC, and by not consulting a vocational expert. (Dkt. No. 12 at 10-23.) The Court finds the ALJ's rejection of Listing 12.05(c) and his determination of Plaintiff's RFC as it pertains to his mental capabilities were not supported by substantial evidence.

### A. Severity

At step two of the evaluation, the medical severity of a claimant's impairments is considered. 20 C.F.R. §§ 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. at §§ 404.1520(c), 404.1521. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." *Id*. at § 404.1521(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id*.; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, at *11 (W.D.N.Y. Nov. 18, 2005); *Camacho v.*

*Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).  The claimant bears the burden of presenting evidence to establish severity.  20 C.F.R. § 404.1512(c).  The claimant must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more."  *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Id*. at 271; Social Security Ruling ("SSR") 85-28, 1985 WL 56858, at * 2 (1985).

Here, Plaintiff argues the ALJ erred at step two by not finding Plaintiff's left knee pain severe.  (Dkt. No. 12 at 5-9.)  However, there is little medical evidence in the record to support Plaintiff's claim that his knee impairment significantly limited Plaintiff's ability to participate in basic work activities.

Plaintiff was involved in a work-related accident in 1987, which caused an injury to his left knee.  (T. at 248.)  He underwent arthroscopic surgery after the incident and was informed he had torn cartilage.  *Id*.  Dr. Sheikh examined Plaintiff on September 20, 2012.  *Id*.  Plaintiff told Dr. Sheikh that the pain was currently a "5 out of 10" and was "dull" and "intermittent."  *Id*.  He took Ibuprofen for the knee pain, which provided relief.  *Id*.  There was no swelling present.  (T. at 249.)  Upon examination, Dr. Sheikh noted that Plaintiff's gait was "normal, but slow" and that he used "no assistive devices" and did not require "help changing for exam or getting on and off exam table."  *Id*.  Dr. Sheikh also noted that he was "able to rise from chair without difficulty."  (T. at 250.)  Plaintiff was able to "walk on heels and toes with difficulty" and could

only "squat 50%." *Id.* However, his stance was "normal." *Id.* Dr. Sheikh further noted "limited [range of motion] of the left knee to 130 degrees for flexion and extension" but did not see any "redness, swelling, or effusion." (T. at 251.) Dr. Sheikh diagnosed Plaintiff with a "history of torn cartilage of left knee, status post arthroscopic surgery" and opined Plaintiff was "moderately limited in squatting, walking, lifting and carrying." (T. at 252, 252.) Moreover, X-rays of Plaintiff's left knee, taken on October 12, 2012, showed "moderate to severe tricompartmental degenerative changes of the left knee." (T. at 331.)

Plaintiff argues that in light of these medical records, the ALJ's determination of Plaintiff's knee impairment as non-severe was in error. (Dkt. No. 12 at 5-10.) The Court disagrees. Plaintiff's testimony contradicted the notion that his knee impairment significantly limits his ability to do basic work. For example, when asked about his reasons for leaving his prior employment, which involved mostly standing as well as lifting approximately forty pounds several times an hour, he never mentioned his left knee pain being an issue. (T. at 37-38.) In fact, Plaintiff testified he stopped working as a parts cleaner because his vehicle broke down. *Id.* Nor does Plaintiff ever mention his left knee impairment interfering with his prior jobs, all of which were physically intensive and required him to be on his feet constantly as well as lift upwards of forty pounds. (T. at 36-38.)

Further, when asked by the ALJ "what is it that is going on in your body that prevents you from working," Plaintiff testified that it was his COPD that affected his ability to work. (T. at 39.) It was not until the ALJ specifically asked whether Plaintiff has problems with his left knee that Plaintiff testified he has "a little bit" of a problem with the knee and that "it gives out"

because "it has arthritis in it." (T. at 40.) Plaintiff also testified that he was not currently seeking treatment for his left knee. *Id.* When asked to describe Plaintiff's physical limitations, FNP Verduin, who treated Plaintiff for years, responded that "[patient] denies any limitations." (T. at 238.)

In light of Plaintiff's own testimony and FNP Verduin's findings, the Court finds the ALJ's determination of Plaintiff's left knee impairment as non-severe is supported by substantial evidence.

### B. Listings

The inquiry at step three is whether, based solely on medical evidence, the claimant has an impairment noted in the Listings in Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has one of the listed impairments, the Secretary will consider the claimant disabled without looking at vocational factors, and the claimant will automatically be entitled to benefits. *Id.* at §§ 404.1520(d), 416.920(d). The Secretary presumes that someone with a listed impairment is unable to perform substantial gainful activity. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"Under the regulations, the ALJ's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, as shown in the medical evidence, with the medical criteria as shown with the listed impairment." *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (citing 20 C.F.R. § 404.1526). However, the burden is on the claimant to present medical findings that show his or her impairments match a listing or are equal in severity to a listed

impairment. If a claimant's impairment manifests only some of the criteria in the listing, no matter how severely, the impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry*, 675 F.2d at 469. While a court may be able "to look to other portions of the ALJ's decision" and to "credible evidence in finding that his determination was supported by substantial evidence," the Second Circuit has noted that "[c]ases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision." *Id*. (citations omitted). Thus, while an ALJ is not obligated to address specifically each piece of evidence in his decision, *Jones v. Barnhart*, No. CV-04-2772 (FB) (VVP), 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2005), he is not excused "from addressing an issue central to the disposition of the claim." *Ramos v. Barnhart*, No. 02 Civ. 3127 (LAP) (GWG), 2003 WL 21032012, at *10 (S.D.N.Y. May 6, 2003) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.") (quoting *Ferraris*, 728 F.2d at 587 (internal quotation marks omitted)).

Here, Plaintiff argues that the ALJ erred in his step three finding that his intellectual disability does not meet or medically equal Listing 12.05(c) in the listed impairments in

Appendix 1. (Dkt. No. 12 at 10-13.)  The requirements for meeting Listing 12.05(c) are threefold.  Specifically, subsection "C" requires both a "valid verbal, performance, or full scale IQ of 60 through 70" as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05(c).  The ALJ acknowledges Plaintiff has a valid "verbal, performance, or full scale IQ of 60 through 70."  (T. at 18.)  Plaintiff's COPD also meets the second requirement of a physical impairment imposing an additional and significant work-related limitation, as it was found severe at step two.  *Baneky v. Apfel*, 997 F. Supp. 543, 547 (S.D.N.Y. 1998) (holding that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under Section 12.05(c) is the severity test, or whether it was found severe at step two, employed by the First, Eighth, and Tenth circuits.)  In this case, it is the third requirement, that to be considered intellectually disabled under Listing 12.05, a plaintiff must "separately establish deficits in [his] cognitive and adaptive functioning" that is contested.  *Talavera v. Astrue*, 697 F.3d 145, 148 (2d Cir. 2012).

After reviewing the record, the Court concludes the ALJ's finding that Plaintiff does not have deficits in adaptive functioning is not supported by substantial evidence.  This District has previously looked to factors such as living on one's own, independently caring for children, cooking, paying bills, communication abilities, and daily living skills as indications of deficits in adaptive functioning.  *Barton v. Astrue*, No. 3:08-CV-0810, 2009 WL 5067526, at *7 (N.D.N.Y. Dec. 16, 2009).  While the Commissioner has defined what "deficits in adaptive functioning" entails, the American Psychiatric Association's criteria for intellectual disability only requires

deficits in two out of eleven areas of adaptive functioning.  DSM-IV 49 (4th ed. 2000) (listing

area of adaptive functioning as communication, self-care, home living, social/interpersonal skills,

use of community resources, self-direction, functional academic skills, work, leisure, health, and

safety.)  Although the DSM-IV criteria have not been adopted by the Commissioner, they were

noted in the ALJ's decision and Listing 12.05 allows the use of *any* of the diagnostic methods

endorsed by the four major professional organizations.  67 Fed. Reg. 20018-01, at 20,022

("SSA's definition established the necessary elements, while allowing use of any of the

measurement methods recognized and endorsed by the professional organizations.")

      In this case, the Court finds the ALJ erred by failing to fully consider Dr. Loomis'

findings in terms of Plaintiff's adaptive functioning abilities and this error necessitates remand.

During an examination on November 13, 2013, Dr. Loomis noted that Plaintiff "evidenced his

biggest and most significant adaptive behavioral deficits in his communication abilities and is

currently functioning around that of a 7 year old for his written abilities, an 8 year old for his

receptive abilities, and a 9 year old for his expressive abilities."  (T. at 336.)  The ALJ finds this

to contradict an earlier examination by Dr. Loomis, performed on September 20, 2012, that

Plaintiff's "speech was fluent and clear and he had adequate expressive and receptive language."

(T. at 244.)  The ALJ also pointed to Plaintiff's hand-written function report as evidence that,

contrary to Dr. Loomis' findings, Plaintiff does not have any functional deficits in his

communication skills.  (T. at 19.)  Yet, if actually completed by Plaintiff, the function report

supports Dr. Loomis' findings of Plaintiff having the written skill level of a seven year old.  For

example, there are multiple instances where his response indicates he did not understand the

question, such as his response of "he self" to the question of "explain how your illnesses, injuries, or conditions affect your ability to dress." (T. at 162.) His responses, even when they correctly and appropriately respond to the query, also indicate a deficit in communication abilities. When asked why he does not prepare his own food, Plaintiff responded "he done not prepare he own meals because wife prepare meal for me." (T. at 163.)

The ALJ also points to Plaintiff's past work history, and the lack of any indication that his writing and reading deficits interfered with his ability to maintain his employment. (T. at 19.) While this may be true, Plaintiff also testified that his past jobs all involved intensive manual labor and the ALJ found him unable to perform any of his past relevant work. (T. at 19, 36-38.) It is not hard to envision a scenario where Plaintiff's reading and writing abilities might interfere with the types of employment designated by his RFC.

The ALJ noted that Plaintiff "reported he can dress, bathe, and groom himself daily, cook and prepare his own food, and complete general cleaning and laundry." (T. at 245.) Yet, Dr. Loomis reported Plaintiff to be "casually dressed with poor hygiene and was malodorous" when she met with him on November 13, 2013. (T. at 334.) FNP Verduin also indicated that Plaintiff had "poor hygiene" and "poor dental health" in general. (T. at 236.) On his function report, Plaintiff also indicated that his wife prepares his meals and that he only prepares food for himself once a month. (T. at 163.) Plaintiff testified that his wife keeps track of his doctor's appointments, refills his prescriptions, and pays all of the household bills. (T. at 44-46.) In his function report, Plaintiff noted that he needs help to remember to take his medication. (T. at 163.) Dr. Loomis found that Plaintiff had "moderate deficits in his domestic living skills and he

is currently functioning around that of a 14 year old." (T. at 336.)  Dr. Loomis also concluded

that that Plaintiff did demonstrate "some significant cognitive delays that have negatively

impacted his ability to function adequately on a daily basis."  (T. at 336.)

Defendant also argues that Plaintiff does not meet or equal Listing 12.05(c) because there

is no "record documenting a worsening in the condition."  (Dkt. No. 13 at 9.)  This argument,

that there must be some decline in Plaintiff's mental capabilities to show severity, was first

hinted at by the ALJ where he notes a lack of "record documenting a decline in [Plaintiff's]

cognitive functioning."  (T. at 23.)  The emphasis on a decline in mental functioning is

misplaced.  The Second Circuit established that "that evidence of a qualifying deficit in adult

cognitive functioning serves as prima facie evidence that those deficits existed prior to a

petitioner's twenty-second birthday."  *Talavera*, 697 F.3d at 148.  This presumption necessarily

relies on the very idea that a person's IQ and cognitive functioning are stagnant, which the

Second Circuit has noted: "[w]e agree with the majority of our sister Circuits that it is reasonable

to presume, in the absence of evidence indicating otherwise, that claimants will experience a

'fairly constant IQ throughout [their] li[ves].'"  *Id*. at 152.  The Court therefore rejects the

argument that it is necessary to evidence a decline in mental abilities in order to establish a

severe mental deficit.

Listing 12.05 does not require a complete lack of adaptive functioning, and Plaintiff need

not be completely helpless in order to be deemed as having deficits in adaptive functioning.

*Barton,* 2009 WL 5067526, at *8.  With this in mind, the Court finds that the ALJ's

determination that Plaintiff does not suffer from deficits in adaptive functioning is not supported

by substantial evidence.

### C. Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §§ 404.1546(c), 416.946(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(b), 416.969a(a).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 307 F. Supp. 2d at 440.

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly consider Plaintiff's inability to maintain adequate levels of attention and concentration. (Dkt. No. 12 at 13-20.)

In forming the mental component of Plaintiff's RFC, the ALJ gave some weight to FNP Verduin's assessment that Plaintiff had limitations for understanding and memory but had no limitations for sustained concentration and persistence. (T. at 22.) The ALJ gave FNP Verduin's opinion some weight as she treated Plaintiff for years. The ALJ did not adopt Dr. Loomis' determination that Plaintiff was not able to maintain attention and concentration, as he found that determination to contradict an earlier note that Plaintiff's attention and concentration was "mildly impaired." *Id.* However, in testing Plaintiff's attention and concentration, Dr. Loomis reported that Plaintiff "was unsuccessful at completing simple calculations" and was "unable to

complete serial 3s. [Plaintiff] states, '20, 18, 15, 12, 9, 6, and 3.'" (T. at 245.) Even if Dr. Loomis' conclusions were somewhat contradictory, both established some level of impairment of attention and concentration, which was supported by diagnostic tests.

The ALJ allocated great weight to the opinion of Dr. Blackwell, a state agency medical consultant who had never met Plaintiff but opined that he was able to perform simple work activity after reviewing his medical records. (T. at 23.)

Due to the ALJ's disregard of Dr. Loomis' opinion regarding Plaintiff's attention and concentration testing, the Court finds Plaintiff's RFC is not supported by substantial evidence.

### D. Vocational Expert

Continuing with the fifth step of the evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work. 20 C.F.R. §§20 C.F.R. §§ 404.1560(c), 416.960(c); s*ee Edwards v. Astrue*, No. 5:07 CV 898, 2010 WL 3701776, at *12 (N.D.N.Y. Sept. 16, 2010). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). A hearing officer can determine whether a claimant's nonexertional limitations significantly diminish his or her work capacity by determining whether the claimant can meet the basic mental demands of competitive, remunerative, and unskilled work as provided in Social Security Regulation 85-15. SSR 85-15, 1985 WL 56857, at *3 (SSA Jan. 1, 1985). These demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to respond appropriately to

supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. at *4. A substantial loss of ability to meet any of these demands would severely limit the potential occupational base. *Sipe v. Astrue*, 873 F. Supp. 2d 471, 480 (N.D.N.Y. 2012).

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*.

The grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment. *Rosa*, 168 F.3d at 82; 20 C.F.R. § 404.1569a(c)(2). The ALJ cannot rely on the grids if a nonexertional impairment has any more than a "negligible" impact on the claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). A nonexertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). However, after it has been determined that a plaintiff can perform unskilled work, application of the grids is appropriate. *Id*. at 410; s*ee also Howe v. Colvin*, No. 12 Civ. 6955, 2013 WL 4534940, at *18 (S.D.N.Y. Aug. 27, 2013) (a claimant's limitation to simple, routine, and repetitive tasks in a low stress environment had little or no effect on the occupational base of unskilled sedentary work). "The mere existence of a nonexertional impairment does not

automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

Plaintiff argues the ALJ erred at step five by relying solely on the grids instead of consulting with a vocational expert. (Dkt. No. 12 at 20.) Since the Court has concluded that substantial evidence does not support the ALJ's findings with respect to Listing 12.05(c) and Plaintiff's RFC, the Court need not address Plaintiff's argument as to the applicability of the grids. However, on remand the ALJ should assess all the relevant evidence and request the consultation of a vocational expert, in light of Plaintiff's current advanced age, level of intellectual functioning, and COPD.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion for judgement on the pleadings (Dkt. No. 12) and **REMANDS** this case to the Commissioner for reconsideration in accordance with this Decision and Order.

**IT IS SO ORDERED.**

Dated: August 2, 2016
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge